Melody CURETON, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 96–250.

Supreme Court of Wyoming.

Dec. 15, 1997.

Sylvia L. Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; Michael Dinnerstein, Director, Defender Aid Program; and Scott Klosterman, Legal Intern, for Appellant (Defendant).

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Kimberly A. Baker–Musick, Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; and Lori A. McMullen, Student Intern, for Appellee (Plaintiff).

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

TAYLOR, Chief Justice.

Appellant was convicted by a jury of two counts of delivery of a controlled substance. She appeals her conviction, asserting ineffective assistance of counsel. We affirm.

## I. ISSUES

Both appellant and appellee phrase the issue as:

Was appellant denied effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution and Article I, Section 10 of the Wyoming Constitution?

## II. FACTS

On May 9, 1995, the Wyoming Division of Criminal Investigation set up a purchase of controlled substances. Mr. Arlo Witcher, equipped with an electronic monitoring device and $210.00 in prerecorded money, entered the home of appellant, Melody Cureton (Cureton), and purchased marijuana and methamphetamine from Cureton. On June 2, 1995, Cureton was arrested and charged with two counts of delivery of a controlled substance. The Public Defender in Sheridan County, Wyoming was appointed to represent Cureton, and the preliminary hearing was scheduled for June 19, 1995.

Cureton pled not guilty to both counts, and the trial was scheduled for February 7, 1996. The trial was postponed by the district court and rescheduled for April 24, 1996. One week prior to trial, defense counsel's health deteriorated to the point where he was unable to pursue Cureton's case to completion. Another attorney in the public defender's office agreed to handle Cureton's trial. He entered his appearance on Cureton's behalf two days before trial was scheduled to begin.

Prior to this attorney's entry into the case, Cureton had sent a letter to the district court complaining about her attorney and asking that the case be dismissed due to a speedy trial violation. The district court asked Cureton, prior to the start of trial, whether she was satisfied with her new attorney and whether she felt he was acting on her behalf. She responded, "Yes sir." Cureton's trial counsel explained to the district court that he had consulted with the previous attorney, made significant witness contacts, and reviewed reports and investigations. Cureton's trial counsel stated he felt comfortable with his preparation and, during trial, he would have the assistance of the investigator who worked on the case from its inception.

At trial, Cureton's trial counsel cross-examined each of the State's witnesses and objected to the introduction of the controlled substances purchased by Mr. Witcher, based upon problems with the chain of custody. At the close of the State's evidence, Cureton's trial counsel informed the district court he intended to call one of the State's witnesses during Cureton's case and have that witness open the bundle which purportedly contained methamphetamine. Also at this time, Cureton informed the district court she would exercise her right to remain silent and not testify. After a recess, Cureton's trial counsel informed the district court he had decided, as a matter of trial strategy, not to call any witnesses, leaving the jury to speculate as to why the bundle was never opened, and allowing him to argue that the jury did not truly know what was in that bundle.

Cureton's trial counsel began his closing argument by telling the jury the case was important to his client, it was important to him, and he was "concerned that I haven't done an adequate job in this trial." He went on to argue that the case was not important to the State, chronicling all of the evidence indicating errors or glitches in the preparation of the case, the controlled buy, and the chain of custody.

Cureton was found guilty of both counts, and sentenced to two terms of three-to-five years in the Wyoming Women's Center, with the sentences to run concurrently. After her sentencing, Cureton filed this appeal alleging her trial counsel was ineffective.

## III. STANDARD OF REVIEW

The standard of review for determining ineffective assistance of counsel was articulated by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984):

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

We adopted the *Strickland* standard in *Frias v. State,* 722 P.2d 135, 145 (Wyo.1986). In applying this standard,

"[w]e do not evaluate the efforts of counsel from a perspective of hindsight but, rather, we endeavor to reconstruct the circumstances surrounding counsel's challenged conduct and evaluate the professional efforts from the perspective of counsel at the time. *Strickland.* 'We invoke a strong presumption that counsel rendered adequate and reasonable assistance making all decisions within the bounds of reasonable professional judgment.' *Gist [v. State],* 737 P.2d [336] at 342 [ (Wyo.1987) ] * * *. The burden is upon the defendant to overcome this presumption that, in light of the circumstances, the challenged action or failure of the attorney might be considered sound trial strategy. *Strickland.*"

*Arner v. State,* 872 P.2d 100, 104 (Wyo.1994) (*quoting Dickeson v. State,* 843 P.2d 606, 609 (Wyo.1992)); *see also Herdt v. State,* 891 P.2d 793 (Wyo.1995).

## IV. DISCUSSION

Cureton argues that her trial counsel's late entry of appearance and his decision to call no witnesses in her defense lead to an assumption that he failed to conduct an adequate investigation into her case and a conclusion that a continuance should have been requested. Cureton bolsters this argument by citing three comments made by her trial counsel on the record. The first comment is an indication that her trial counsel was not

fully apprised on the issue of Cureton's right to a speedy trial, the second indicates that her trial counsel had limited contact with Cureton prior to trial, and the third is a statement to the jury during closing argument that her trial counsel was concerned he had not done a good job of presenting Cureton's case.

Critical to our analysis of this case is a discussion on the record between the district court and trial counsel for both parties prior to the start of trial. The discussion was occasioned by Cureton's letter to the district court complaining about her previous attorney and asking that the case be dismissed for lack of a speedy trial. The district court began by asking Cureton:

THE COURT: * * *

Ms. Cureton, apparently the Public Defender's Office saw to it that you got different counsel in this case. You've had an opportunity to talk with [Counsel] about your case; is that right?

THE DEFENDANT: Yes, sir.

THE COURT: Have you had any problems with [Counsel]?

THE DEFENDANT: No, sir.

THE COURT: So you're convinced that he's working in your interests?

THE DEFENDANT: Yes, sir.

The district court asked Cureton's trial counsel whether he wished to make an argument regarding lack of speedy trial. In response, Cureton's trial counsel provided an explanation as to Cureton's prior attorney's health problems and his own entry into the case. During that explanation, he stated, "[s]o my entry into this case has come at a very, very late hour; and I have not—you know, in all candor with the Court, I am not fully apprised of the issues such as speedy trial and those things." Cureton's trial counsel also told the district court he was aware the issue had been raised by his client and he had reviewed the district court's file and Wyoming case law on the right to a speedy trial. It was his conclusion that Wyoming law would not support a dismissal on the basis of lack of a speedy trial.

Cureton's trial counsel went on to state that, "while [Cureton] expresses apparent

satisfaction with my representation in this case at this matter, our contact has been very limited." However, he assured the district court he had the assistance of the investigator who had worked on the case from the beginning. Cureton's trial counsel specifically stated:

> I've had adequate time to sit down, read [the investigator's] reports, read his investigations. We have made significant witness contacts in the relatively short period of time that I've been involved in the case, and I am comfortable with my preparation in the case.

■ The above discussion strongly supports our beginning presumption that Cureton's trial counsel performed effectively and appropriately. The statements made by Cureton's trial counsel that he had contacted witnesses, that he had the assistance of the individual who had conducted the investigation of Cureton's case, and that he was prepared for trial are in direct conflict with Cureton's assumption of an inadequate investigation. Cureton bears the burden of overcoming the presumption that her attorney's decisions were sound trial strategy, and the only evidence she has proffered to meet this burden are the three statements by her trial counsel to the district court and the jury.

■ The first statement, that Cureton's trial counsel was not fully apprised of the speedy trial issue, is not, as Cureton argues, an admission of inadequate preparation. Rather, it is a statement that Cureton's previous attorney did not inform trial counsel that speedy trial was an issue of concern. Cureton's trial counsel informed the district court of his efforts to acquaint himself with that issue, and of his conclusion that Wyoming law would not support dismissal. The district court found that Cureton's right to a speedy trial was not violated and that dismissal was not warranted. Cureton has not raised violation of a speedy trial as an issue in this appeal, and she has not explained how her previous attorney's failure to acquaint trial counsel with that issue equates with inadequate preparation by trial counsel.

■ Nor is the second statement, that Cureton and her trial counsel had limited contact, an admission of inadequate preparation. Cureton has not offered an explanation of how she was prejudiced by this lack of contact. We are unaware of any exculpatory evidence or other relevant information Cureton was unable to provide to her trial counsel. If such evidence exists, it was Cureton's burden to bring it forward on appeal.

■ The third statement by Cureton's trial counsel was made to the jury during closing argument. Cureton's trial counsel said he was concerned he had not done an adequate job for his client. When read in the context of the rest of the closing argument, it is obvious that this line was a carefully crafted and strategically placed attempt to enlist the support of the jury. This is a common trial tactic employed by criminal defense attorneys, and we will not turn it into fodder for appeal.

Cureton's entire argument is based upon assumption and conjecture. In order for us to find in her favor, we must assume: (1) her trial counsel's late entry into the case equates with inadequate preparation; (2) there was exculpatory evidence in Cureton's possession which she did not have an opportunity to impart to her trial counsel; and (3) Cureton's trial counsel's decision to call no witnesses in Cureton's defense is the result of his failure to contact potential witnesses either because he did not have enough time to make the contacts or because he did not have enough time to learn of their existence from Cureton. We are asked to extend this conjecture into a conclusion that Cureton's trial counsel was ineffective in failing to seek a continuance of the trial.

■ It takes more than assumption and conjecture to overcome our strong presumption that Cureton's trial counsel's decisions were sound trial strategy. Cureton has failed to demonstrate a specific factual basis to contradict her trial counsel's pre-trial assurances to the district judge that he was comfortable with his preparation. Cureton has failed to demonstrate that her trial counsel made errors so serious he could not have been functioning as the counsel guaranteed by the Sixth Amendment. Quite simply, Cureton has not met her burden.

Cureton requests, almost tangentially, that we remand this case to the district court for an evidentiary hearing so that she may demonstrate the facts necessary to meet her burden of proof.

> [Where] contentions of ineffectiveness are first developed by appellate counsel during record examination and appellate briefing preparation, a motion for remand should be made and appropriately supported by contentions defining and supporting any ineffectiveness claim in detail and supported, as may be appropriate, by affidavit sufficient to establish substantially.

*Calene v. State,* 846 P.2d 679, 692 (Wyo. 1993); *see also Leach v. State,* 836 P.2d 336 (Wyo.1992).

As discussed above, Cureton has not defined a specific factual basis for her ineffectiveness claim. Although she identifies one potential defense witness, we are not provided, via affidavit or otherwise, the proposed testimony of that witness, nor are we given the names and proposed testimony of other witnesses she believes should have been called in her defense. Cureton has not provided even a hint of exculpatory evidence that her trial counsel failed to learn or investigate. Thus, there is no factual support for a finding that remand is appropriate.

## V. CONCLUSION

Cureton has failed to meet her burden of overcoming the presumption of effective assistance by her trial counsel. Accordingly, the conviction is affirmed.